```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES OF AMERICA,               :
                Plaintiff,              :
                                        :    98 Civ. 2279 (DLC)
        -v-                             :
                                        :    OPINION & ORDER
ALL RIGHT, TITLE AND INTEREST IN        :
PROPERTY, APPURTENANCES, AND            :
IMPROVEMENTS KNOWN AS 479 TAMARIND      :
DRIVE, HALLENDALE, FLORIDA, LISTED AS   :
LOT 30 IN BLOCK 7 OF GOLDEN ISLES       :
SECTION "B", AND RECORDED IN PLAT BOOK  :
45, PAGE 30 OF THE PUBLIC RECORDS OF    :
BROWARD COUNTY, FLORIDA,                :
                Defendant-in-rem.       :
                                        :
----------------------------------------X
```

APPEARANCES:

For claimant Medical Group Research Associates, Ltd.:
June Resnick German, Esq.
150 Main Street
Huntington, NY 11743

For plaintiff:
Alexander J. Wilson
U.S. Attorney's Office, S.D.N.Y.
One St. Andrew's Plaza
New York, NY 10007


DENISE COTE, District Judge:

   The Government has moved for an order permitting the U.S. Marshals Service to seize and conduct an interlocutory sale of the defendant property, arguing that an interlocutory sale is necessary to preserve the property's value.  Claimant Medical

Group Research Associates, Ltd., has opposed the motion.  For the reasons that follow, the motion is granted.

BACKGROUND

In 1998, Sonia LaFontaine and her husband and former business associate, Arthur Froom (a.k.a. Arthur Kissel) were charged with conspiracy to commit health care fraud, among other related claims.  LaFontaine was arrested immediately and, following a jury trial, was convicted in 2000 of conspiracy to commit mail fraud and healthcare fraud, mail fraud, healthcare fraud, witness tampering, and engaging in illegal financial transactions.  She was sentenced to serve 120 months in prison.  Correction of Sentence, United States v. LaFontaine, No. 98 Cr. 251, Dkt. No. 206 (S.D.N.Y. Aug. 18, 2006).  In 1998, Froom fled to Canada to avoid arrest for his role in the healthcare fraud conspiracy.  He was later extradited to the United States, where he pled guilty and was likewise sentenced to 120 months' imprisonment.  United States v. Froom, No. 98 Cr. 251, Dkt. No. 252 (S.D.N.Y. Nov. 2, 2010).

On March 30, 1998, the Government filed this civil forfeiture action alleging that the defendant property, 479 Tamarind Drive, was purchased with the proceeds of the healthcare fraud for which LaFontein and Froom were convicted.  The property is a 3-bedroom, 2-bathroom, 3,860 square-foot house

in a gated community in Hallendale, Florida.  As of December 6, 2011, it was appraised at $769,000.  The property is currently in the possession of Medical Group Research Associates, Ltd. ("MGRA"), which appears to have been using it for income-producing purposes, and has been responsible for maintenance, upkeep, and property taxes.

Over the course of this litigation, a number of parties have claimed an interest in the property: LaFontein, Froom, Elliot Pearl, Susan Szilari, and MGRA.  On October 14, 2005, the Honorable Robert L. Carter, to whom this case was previously assigned, issued an opinion and order striking the claims filed by Froom, Pearl, and Szilari.  <u>United States v. 479 Tamarind Drive</u>, No. 98 Civ. 2279 (RLC), 2005 WL 2649001, at **2-4 (S.D.N.Y. Oct. 14, 2005).

The case was transferred to this Court on November 24, 2009.  A discovery schedule that had been set on February 16, 2010 was stayed pending the sentencing of Froom.  The stay was lifted on November 4, 2010.  On December 10, 2010, the Government moved to strike LaFontein's claim against the defendant property for lack of standing; the motion was granted in an Opinion and Order of March 11, 2011.

Pursuant to an order of February 2, 2011, proceedings in the underlying forfeiture action were again stayed so that the Government could conduct limited discovery into the ownership

3

structure of MGRA. The Government suspects that MGRA may be an alter ego of LaFontein or Froom and that MGRA may, therefore, lack standing to assert claims against the defendant property. That discovery remains ongoing. Most recently, an Order of May 14, 2012, granted the Government permission to depose Froom, LaFontaine, Szilasi, and Pearl on the subject of their ownership interests in MGRA.

On May 11, 2012, the Government filed the instant motion for an interlocutory sale of the defendant property, asserting that the property is at risk of seizure due to non-payment of property taxes. In support of its motion, the Government produced tax records from Broward County (the "County"), which indicate an outstanding property tax balance on the defendant property of $17,789.45 for 2011 and $22,648.10 for 2010. On June 25, MGRA, the only remaining claimant, filed a brief in opposition to the Government's motion.[1] The Government submitted no reply.

---

[1] MGRA's brief in opposition to the Government's motion was filed by attorney June German. German entered the case pursuant to a stipulation dated January 11, 2006, signed on behalf of MGRA by Elliot Pearl, Arthur Froom, and Susan Szilazi; the stipulation was so-ordered by the court on June 2, 2006. On August 27, 2012, Canadian attorney Robyrt Regan wrote to the Court concerning LaFontaine's scheduled deposition, representing that he and not Ms. German, was the attorney for LaFontaine and MGRA. Mr. Ryan, who does not represent that he is licensed to practice law in the United States, has not filed a notice of appearance in this action. In any case, he has not made any arguments on

DISCUSSION

The Government's motion for an interlocutory sale is governed by Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions ("Supp. R."). Pursuant to that rule, "[w]hen the government does not have actual possession of the defendant property the court . . . may enter any order necessary to preserve the property, to prevent its removal or encumbrance, or to prevent its use in a criminal offense." Supp. R. G(7)(a). Specifically, the rule provides that "the court may order all or part of the property sold if . . . the property is subject . . . to taxes on which the owner is in default." Supp. R. G(7)(b)(i)(C).

An interlocutory sale is appropriate in this case. More than $40,437.55 in taxes are currently due on the defendant property, raising a risk that the County may move to impose a lien and thereby diminish the property's value to the Government should this forfeiture action succeed.

The risk is real. In May of 2011, having been unable to collect property taxes for the 2009 calendar year, the County issued a Tax Certificate on the defendant property. The Certificate was guaranteed by a lien on the defendant property

---

behalf of MGRA or any other party regarding the merits of the Government's motion.

and entitled the third-party that purchased the Certificate at auction to collect the past-due tax bill ($26,247.68), plus interest at a rate of 0.25%.  Under Florida law, the issuance of a Tax Certificate is the first step in the process for conducting a tax sale of the underlying property.  <u>See</u> Fla. Stat. §§ 197.432, 197.502.  The lien on the defendant property was only lifted when, in March 2012, MGRA redeemed the Certificate.  In light of this history and the current property tax balance, an interlocutory sale is necessary to avoid the very real possibility that the defendant property may be again encumbered and its value diminished.

In opposing the Government's motion for an interlocutory sale, MGRA argues principally that the Government's interest in the defendant property is not seriously threatened because (1) there is no immediate danger that the defendant property will be subject to a tax sale, (2) the value of the defendant property is far in excess of the outstanding tax bill, and (3) if the property is foreclosed upon, MGRA's interest will be depleted before any interest the Government might have.  MGRA misapprehends the nature of a civil forfeiture proceeding, which is an <u>in rem</u> action premised on the legal fiction that the property proceeded against can be "held guilty and condemned as though it were conscious instead of inanimate and insentient." <u>United States v. Contorinis</u>, --- F.3d ---, 2012 WL 3538270, at

*7 (2d Cir. 2012) (quoting Various Items of Personal Property v. United States, 282 U.S. 577, 581 (1931)).  Unlike criminal forfeiture, which is an in personam proceeding that results in a judgment against the criminal defendant for a specific sum, id. at *8, civil forfeiture entitles the Government to take possession of the defendant property in its entirety.  See Kickham Hanley P.C. v. Kodak Ret. Income Plan, 558 F.3d 204, 211 (2d Cir. 2009) ("Under the civil forfeiture statute, '[a]ll right, title, and interest in [the defendant] property [vests] in the United States upon commission of the act giving rise to forfeiture.'") (quoting 18 U.S.C. § 981(f))(alterations in Kickham).  MGRA's suggestion that the Government would not be prejudiced by the issuance of a new tax certificate, or even a tax sale, is therefore incorrect.  Because the Government hopes to take full title to the defendant property, any action by tax authorities to encumber the property will have a direct impact on the value the Government can recover through this action.[2]

---

[2] Although MGRA claims that the Government's forfeiture interest would be superior to the County's interest due to any lien, it is at least arguable that the County could invoke the innocent owner defense provided under 18 U.S.C. § 981 (a)(2) (1998).  See Office of Legal Counsel, Liability of the United States for State and Local Taxes on Seized and Forfeited Property (Oct. 18, 1993) (concluding that, in a civil forfeiture proceeding under 21 U.S.C. § 881, "the United States is obligated to pay liens for state and local taxes accruing after the commission of the offense leading to forfeiture and before the entry of a judicial order of forfeiture, if the lien-holder establishes, before the

MGRA's other arguments are similarly unpersuasive.  MGRA contends that an interlocutory sale would violate its rights under the Seventh Amendment, but as evidenced by the fact that Rule G(7)(a) confides the power to order an interlocutory sale to the court, the jury-trial right does not apply here.  The relief the Government seeks is equitable in nature, intended as it is to preserve the status quo.  See AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 451 (2d Cir. 2009) ("The Seventh Amendment affords a right to trial by jury in civil cases arising in law rather than equity.").

Nor is there any merit to MGRA's claims that an interlocutory sale would violate its rights under the Due Process and Takings Clauses of the Fifth Amendment.  MGRA has had a full and fair opportunity to be heard on the Government's motion, and the Takings Clause does not operate outside of the eminent domain context.  See United States v. Davis, 648 F.3d 84, 97 (2d Cir. 2011).

MGRA's Eighth Amendment argument is likewise unavailing. The Constitution's prohibition on excessive fines only proscribes payments that "may be characterized, at least in part, as punitive."  Id. at 96 (citation omitted).  If the Government is ultimately successful in its forfeiture claim it

---

court enters the order of forfeiture, that it is an innocent owner of the interest it asserts").

will be because MGRA had no right to the property, not because of any conduct it might have engaged in that is worthy of punishment; if MGRA avoids forfeiture, it will be entitled to the proceeds from the interlocutory sale and thus will not be significantly prejudiced.

Finally, MGRA argues that an interlocutory sale would violate the North Atlantic [sic] Free Trade Agreement. Because MGRA's brief provides no factual basis or legal argument in support of this claim, however, the Court declines to address it. It is well settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Tolbert v. Queens Coll., 242 F.3d 58, 75 (2d Cir. 2001).

## CONCLUSION

The Government's May 11 motion for an interlocutory sale of the defendant property is granted.

SO ORDERED:

Dated:   New York, New York
         September 7, 2012

                                    _____
                                         DENISE COTE
                                    United States District Judge

COPIES SENT TO:

Alexander J. Wilson
U.S. Attorney's Office
One St. Andrew's Plaza
New York, NY 10007

June Resnick German, Esq.
150 Main Street
Huntington, NY 11743